NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 3 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CENTRAL OREGON WILD HORSE
COALITION, a non-profit
organization; GAYLE HUNT, an
individual; MELINDA KESTLER, an
individual,

Plaintiffs - Appellants,

v.

TOM VILSACK, in his official capacity as
Secretary of the U.S. Department of
Agriculture; RANDY MOORE, Chief of the
U.S. Forest Service, in his official
capacity; GLENN CASAMASSA, Regional
Forester, Pacific Northwest Region of the
U.S. Forest Service, in his official
capacity; SHANE JEFFRIES, Forest
Supervisor of Ochoco National Forest of the
U.S. Forest Service, in his official capacity,

Defendants - Appellees.

No. 23-4260

D.C. No.
2:21-cv-01443-HL

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted December 2, 2024
San Francisco, California

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Before: COLLINS, VANDYKE, and MENDOZA, Circuit Judges.

The Central Oregon Wild Horse Coalition and certain of its members (collectively the "Coalition") appeal the district court's decision granting summary judgment for the U.S. Forest Service (the "Service"). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

We review a grant of summary judgment de novo and review the agency's decision to approve the Ochoco Herd Management Plan (the "Plan") under the Administrative Procedure Act ("APA") to determine whether the approval was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1032 (9th Cir. 2020) (citation omitted). "An agency's decision is arbitrary and capricious if it fails to consider important aspects of the issue before it, if it supports its decisions with explanations contrary to the evidence, or if its decision is either inherently implausible or contrary to governing law." *In Def. of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1066 (9th Cir. 2014).

1. The Service did not violate the Wild Free-Roaming Horses and Burros Act ("Wild Horses Act") by adopting the Plan. The Wild Horses Act requires that the Service "manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance on the public lands,"

2 23-4260

and that "[a]ll management activities shall be at the minimal feasible level." 16 U.S.C. § 1333(a).

The Service's decision to set the Appropriate Management Level ("AML") using the available forage in the winter range considered all important aspects of the issue, was not contrary to the evidence, was not implausible, and was not contrary to governing law. Using the availability of winter range forage as the most limiting factor was consistent with scientific recommendations and supported by specific data from two horse population surveys, the elevations horses were typically observed at during winters, and the slope aspect at which horses could reasonably forage, among other evidence. So the Service's reliance upon the winter range was not arbitrary and capricious.

The Coalition argues that the Service violated its statutory obligations by declining to consider the Coalition's winter range sighting data because the Wild Horses Act requires that the Service's decisions be made based on "all information currently available." 16 U.S.C. § 1333(b)(2). The Coalition's aggregated data did not include certain information the Service needed in order to use the data to determine the scope of the winter range. And the Coalition never provided to the Service the information that the Service needed, either through correspondence, or during multiple rounds of comments and objections. The Service instead used data from multiple sources confirming the scope of the winter range, and the Service

explained why the Coalition's contrary map did not undermine its conclusion. Even if we were to adopt the Coalition's construction of the Wild Horses Act's statutory requirements, the Service appropriately discounted the portion of the data that the Coalition actually submitted, *see San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 626 (9th Cir. 2014), and relied upon the information that was "currently available" to it, 16 U.S.C. § 1333(b)(2).

The Service also considered voluminous data in support of its conclusion that "[t]he current number of wild horses are contributing to the declined riparian conditions, as riparian areas have been repeatedly over-utilized." The Coalition's objections to the Service's considerations of this data "amount to the sort of quibbling that can't overcome [our court's] deferential standard of review." *In re Big Thorne Project*, 857 F.3d 968, 976 (9th Cir. 2017).

In sum, the Service reasonably considered the available evidence and reached a reasonable decision in adherence to the Wild Horses Act's statutory requirements. *In Def. of Animals*, 751 F.3d at 1066. We find no violation of the APA or the Wild Horses Act.

2. The Service also complied with the National Environmental Policy Act ("NEPA") with respect to each of the Coalition's claims. "In reviewing a decision not to prepare an [Environmental Impact Statement] under NEPA, the reviewing court employs an arbitrary and capricious standard that requires us to determine

whether the agency has taken a hard look at the consequences of its actions, based its decision on a consideration of the relevant factors, and provided a convincing statement of reasons to explain why a project's impacts are insignificant." *In Def. of Animals*, 751 F.3d at 1068 (internal quotation marks and alterations omitted).

The Service took a "hard look" at the impacts of the new AML. That is, the Service provided a "reasonably thorough discussion of the significant aspects of the probable environmental consequences." *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1194 (9th Cir. 2008) (citation omitted). As to the Coalition's argument that the Service failed to take a "hard look" by declining to consider the Coalition's map, the argument fails for the same reasons explained above: the Service considered adequate available data to form the winter range. Further, the Service adequately considered the risks of "decimation," including by addressing comments raising the concern and by explicitly concluding that "[c]onducting gathers and reducing the current herd size to AML would not cause extinction" and that predation would "likely be a rare or abnormal occurrence." The Service's decision not to focus more on these "highly speculative harms" was not error. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 355–56 (1989).

The Coalition also argues that the Service violated NEPA by failing to take a "hard look" at the available data regarding the herd's genetics. The Service relied

on two genetic studies of the herd—among other evidence—and the Coalition simply quibbles with the methodology and results from those studies. The Service provided a reasonably thorough discussion of the risks associated with the herd's genetics and probable consequences. *League of Wilderness Defs. Blue Mountains Biodiversity Project v. Allen*, 615 F.3d 1122, 1130 (9th Cir. 2010).

The Service did not fail NEPA's requirement that agencies prepare an Environmental Impact Statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). The Service properly prepared an Environmental Assessment ("EA") and concluded an Environmental Impact Statement was not necessary. *See Am. Wild Horse Campaign v. Bernhardt*, 963 F.3d 1001, 1007–08 (9th Cir. 2020).

The Service also considered each of the Council on Environmental Quality's ("CEQ") ten "intensity" factors for assessing significance as part of its Finding of No Significant Impact ("FONSI"). *See* 40 C.F.R. § 1508.27(b) (2019).[1]

As to the first of the four factors that the Coalition challenges, the project is not "highly controversial." 40 C.F.R. § 1508.27(b)(4) (2019). The Service considered at length in its EA and FONSI the studies and reports that the Coalition

---

[1] CEQ's regulations implementing NEPA were amended in 2020. *See* 85 Fed. Reg. 43,304 (July 16, 2020). The Service applied the pre-2020 regulations to the agency process. The parties agree those regulations apply here. 40 C.F.R. § 1506.13; *see City of Los Angeles v. Fed. Aviation Admin.*, 63 F.4th 835, 841 n.2 (9th Cir. 2023).

points to as presenting a high controversy. The Service "considered and addressed the existing literature in its [EA] and provided reasoning for its conclusions." *Am. Wild Horse*, 963 F.3d at 1011. Mere opposition to an action does not create a controversy within the meaning of NEPA regulations. *Id.* Instead, the Coalition simply shows "the existence of opposition to a use" in the Forest. *WildEarth Guardians v. Provencio*, 923 F.3d 655, 673 (9th Cir. 2019) (citation and emphasis omitted).

Next, the Service reasonably concluded that the "possible effects" of the Plan are not "highly uncertain" and do not "involve unique or unknown risks." 40 C.F.R. § 1508.27(b)(5) (2019). The risks to the herd's unique genetics are not "highly" uncertain, *Am. Wild Horse*, 963 F.3d at 1008, as the Service's genetic plan was consistent with recommendations in the National Research Council's report and the Bureau of Land Management Handbook, genetic studies of the herd, and advice from multiple experts. Indeed, the Service's proposed genetic plan is consistent with its prior introduction of new mares to the herd.

Next, the Service's decision was not precedential, *see* 40 C.F.R. § 1508.27(b)(6) (2019), because the Plan is "highly specific to the project and the locale," *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1140 (9th Cir. 2011), and the Plan does not have a binding effect on future actions, *Anderson v. Evans*, 371 F.3d 475, 493 (9th Cir. 2004). The Plan concerned the herd's specific genetics,

damage to the territory, and the narrow winter range.

Finally, the Plan does not threaten a violation of other environmental laws, *see* 40 C.F.R § l508.27(b)(10) (2019), because, as discussed above, the Service did not violate the Wild Horses Act.

The district court's judgment is **AFFIRMED.**

23-4260